UNITED STATES (The THOMAS AND HENRY v.). See Case No. 13,919.

## Case No. 16,478.

### UNITED STATES v. THOMASSON et al.

[4 Biss. 99.] [1]

District Court, D. Indiana.    July, 1866.

VIOLATION OF REVENUE LAW—PARTNERSHIPS—INTERPRETATION OF STATUTE.

1. Every partner is civilly liable for violations of the revenue law by his co-partners, whether he knew of, or consented to, such violations, or not.

2. The 91st section of the internal revenue act of March 3, 1865 [13 Stat. 475], must be so construed as to create a penalty of three hundred dollars for every violation of it.

3. Penal statutes not authorizing indictments are not ·within the rule of criminal law, that a man is not punishable unless he has been guilty both of a criminal act or omission and a criminal or unlawful intent.

John Hanna, U. S. Dist. Atty., A. G. Porter, and M. M. Ray, for the United States.

McDonald, Roach & Sheeks, for defendants.

McDONALD, District Judge. This is an action of debt on the 91st section of the internal revenue act of March 3, 1865 (13 Stat. 475). The declaration charges, that the defendants [John D. Thomasson and William P. Stults] were manufacturers of tobacco, at Bedford, Indiana; and that. with intent to evade the revenue duties, they fraudulently marked one hundred and twenty boxes of their manufactured tobacco with the proper inspector's marks, the same never having been either inspected or marked by said inspector.

The defendant pleaded the general issue; and by agreement a jury was waived, and the cause was tried by the court. At the request of counsel, the court found specially. This special finding was as follows: "That during the whole of the year 1865, the defendants and one Joseph Gravely (who was sued in this action, but not served with process) were partners in the business of buying, manufacturing, and selling tobacco in the town of Bedford, Indiana; that, during that year, and before the commencement of this action, they manufactured and put up in

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

boxes, in said town, more than five thousand pounds of tobacco in more than three hundred of said boxes; that, in that town, in the month of October, 1865, they fraudulently marked, in the likeness and imitation of the proper inspector's mark, fifty of said boxes of manufactured tobacco, then their joint property as such partners as aforesaid, with the intent to evade the duties thereon, in violation of the act of congress in such case made and provided; that said fifty boxes of tobacco were never inspected or marked by any proper United States inspector of tobacco; that said defendants then and there, as such partners as aforesaid, in the usual course of their trade and business, sold several of said boxes of tobacco, thus fraudulently marked as aforesaid; that said John D. Thomasson, however, had no actual knowledge of, and gave no actual consent to, the said fraudulent marking of said boxes of tobacco and the sale thereof till this suit was commenced; but that, under the circumstances in evidence on the trial, it was his duty, at his peril, to see that no such fraudulent marks were made on any of said boxes of tobacco. Therefore, the court finds the issue joined for the United States, both as against the said Thomasson and the said Stults, and assesses the plaintiff's debt at the sum of fifteen thousand dollars."

On the announcement of this finding, the defendants jointly moved for judgment thereon in their favor. At the same time, Thomasson separately moved for a judgment on the finding in his favor. And along with these motions, the defendants also moved in arrest of judgment.

Counsel agree that all these motions shall be considered and decided together. We therefore proceed to their consideration in the order above stated.

1. The joint motion for judgment on the finding in favor of the defendants, I think is entitled to very little consideration. There can be no doubt that the finding is sufficient to justify a judgment against Stults. And, as under the practice of this court, though perhaps contrary to the common law, this case might be dismissed as to Thomasson, and a separate judgment rendered against Stults, it is clear that this motion must be overruled.

2. The separate motion for a judgment on the finding in favor of Thomasson deserves more attention. It appears by this finding that Thomasson had no actual knowledge of the fraud charged, and gave no actual consent to it. And this circumstance involves the question, whether, as a partner, he is chargeable for the fraud of his co-partner touching a transaction of which he knew nothing and to which he never consented. In other words, as a partner, was he bound in law, at his peril, to prevent the fraud, or to suffer the penalty?

Without doubt, it is a general rule, that every partner is civilly responsible for the

fraud of his co-partner perpetrated in relation to the partnership business. On the other hand, it is certainly a general rule that, in criminal law, no man is punishable unless he has been guilty both of a criminal act or omission and a criminal or unlawful intent. Without the latter there can in general be no crime. And it may be plausibly argued that the reason of this rule applies to all penal statutes. So far, however, as I can learn, penal statutes not authorizing indictments have never been considered as within the rule. The same reason which would apply the rule to such statutes, would also apply it to civil actions for libels. For every libel is a malicious defamation; and malice always supposes a wicked intent. Yet, in an action for a libel, published in a newspaper, against the proprietor, it has been held that he was liable, though it was published against his orders and without his knowledge, in his absence. Dunn v. Hall, 1 Ind. 344.

And in England it is held that the proprietor of a newspaper is answerable for the act of his agent or co-partner, not only civilly, but criminally, though there was no proof of personal knowledge of it on the part of the proprietor. Rex v. Walter, 3 Esp. 21.

The reason of the doctrine in all such cases must proceed on the ground that it is the duty of the proprietor of every newspaper, at his peril, to see that his publications contain nothing libelous; and that every omission of that duty is culpable negligence, equivalent to a malicious or unlawful intent.

"The same principles," says Collyer, "apply to breaches of the revenue laws." Colly. Partn. 306; Attorney General v. Stranyforth, Bunb. 97. And certainly, by the same reasoning, it would seem that when partners engage in the manufacture and sale of tobacco, which, by the revenue law, must be inspected and marked by a United States inspector, every one of them must, at his peril, take care that the revenue be not defrauded by any forged inspection marks on the boxes of tobacco manufactured and sold by the firm.

As well in the case of libels as in the case of revenue frauds, the act of an agent is the act of his principal. And, in such cases, the principal is liable under the rule, that "Qui facit per alium, facit per se." Now, every partner is an agent for all his co-partners. His acts bind the firm, and are, in legal contemplation, the acts of the firm. Cliquot's Champagne, 3 Wall. [70 U. S.] 114.

There are two decisions of the supreme court of Indiana apparently opposed to the foregoing reasoning. Hipp v. State, 5 Blackf. 149; Lauer v. State, 24 Ind. 131. These cases decide that when the agent of the owner of a drinking house, without his knowledge or consent, unlawfully retailed spirits, the owner was not indictable for it. The reason on which these decisions are founded is not very satisfactory. I should hesitate to follow it. I think it would be more rea-

sonable to hold that he who keeps a dram-shop is bound, at his peril, to take care that his agents, in carrying on the business, do not ·violate the law. But at most, these cases are not quite in point. They were cases of indictment under a criminal statute; this is an action of debt on a penal statute.

The true and just rule, in cases like the present, seems to me to be this: that any violation of the internal revenue laws incurring a penalty committed by a partner in the course of partnership business, is, in legal contemplation, the act of all the partners; and that, therefore, each one of them is liable to pay the penalty. This is the view that Judge Story took of the matter. He says ·that "if breaches of the revenue laws, by fraudulent importations, or smuggling, or entries at the custom house, are committed by one of the firm in the course of the business thereof, all the firm would be liable penally, as well as civilly, therefor." Story, Partn. § 166. The English authorities abundantly sustain the same view. Consequently, no separate judgment of acquittal can be rendered in favor of Thomasson.

3. The defendants move in arrest of judgment. This motion proceeds on the supposition that the internal revenue act, fairly construed, does not make it penal to forge inspectors' marks on boxes of manufactured tobacco. The 91st section of the act provides that "the penalties for the fraudulent marking of any box or other package of tobacco, snuff, or cigars, by changing in any manner the packages or the marks thereon, shall be the same as are provided in relation to distilled spirits by existing laws." This provision plainly refers us to another provision of the revenue laws, which declares that "any person who shall attempt fraudulently to evade the payment of duties upon any spirits distilled as aforesaid, by changing in any manner the mark on any cask or package, shall forfeit the sum of three hundred dollars for each cask or package so altered or changed." It is plausibly argued in the defense, that, since the last-cited provision does not provide a penalty for a complete forgery of inspection marks, but only for "changing" genuine ones, the case at bar is not within the act. And, indeed, it seems plain enough that under the last-cited provision of the act, a prosecution could only be sustained for "changing" genuine marks, and not for an outright forgery of inspection marks on packages which had no genuine inspection marks on them. But the 91st section, on which this prosecution is founded, does render penal "the fraudulent marking of any box or package of tobacco," and not merely the "changing" of genuine marks; and the only question is, what penalty, taking these two provisions together, is intended? The 91st section, which creates and defines the offense, does not refer us to any other part of the act for a definition. That were supererogatory. We are, therefore, only referred to another part of.the act for the pen-

alty. The definitions in the part of the act last above cited are consequently wholly unimportant to the point in question. Upon the whole, therefore, I do not doubt that, construing these two parts of the act together, the meaning plainly is this, that whoever shall be guilty of fraudulently marking any box of tobacco in violation of the internal revenue laws, shall forfeit the sum of three hundred dollars for every box so fraudulently marked. The motion in arrest is overruled, and final judgment is rendered for fifteen thousand dollars.

The members of a firm may be jointly indicted for making a fraudulent monthly return of tobacco manufactured, though only sworn to by one of them. U. S. v. Mountjoy [Case No. 15,828].